So Ordered.

Signed this 26 day of August, 2025.



_____
Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:

Anthony R. Pentasuglia,                                        Ch. 7
                                                               Case No. 24-60694-6-pgr
                              Debtors.

---

APPEARANCES:

| | |
|---|---|
| Office of the United States Trustee<br>10 Broad Street<br>Utica, NY 13501 | Paula M. Barbaruolo, Esq. |
| Goldbas and Lareaux<br>*Counsel for Debtor*<br>*Anthony R. Pentasuglia*<br>185 Genesee St. Suite 905<br>Utica, NY 13501 | David G. Goldbas, Esq. |

**MEMORANDUM-DECISION AND ORDER CONDITIONALLY GRANTING THE
UNITED STATES TRUSTEE'S MOTION TO DISMISS**

Presently pending is a Motion to Dismiss filed by the United States Trustee ("UST") on February 20, 2025. (Docket No. 38). Debtor filed opposition on April 1, 2025. (Docket No. 46). The Court heard oral argument on May 6, 2025, and requested a Joint Stipulation of Facts, which

1

the parties submitted on June 3, 2025 (Docket No. 59, J. Stip). After adjournment, the parties reappeared for oral argument on June 10, 2025. Subsequently, the Court provided both parties an opportunity to submit supplemental briefing (Docket No. 61, Text Order). The UST filed its Supplement on June 24, 2025 (Docket No. 62, Suppl.) and the Debtor filed his Supplemental Response on July 08, 2025 (Docket No. 63, Suppl. Resp.). The Court then deemed the matter submitted.

For the following reasons, this Court grants the UST's motion.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a), 1334(b), 157(a), and 157(b)(2)(A), (I), and (O). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

Debtor filed a petition under chapter 7 of the Bankruptcy Code on August 29, 2024.[1] Despite being married, Debtor filed this case as an individual. In September 2024, Debtor's case was selected for an audit by the UST. The UST inquired about why Debtor's Form 122A-1 (Chapter 7 Statement of Your Current Monthly Income) did not include Debtor's spouse's income. In addition, an independent auditor identified a "material misstatement" indicating that Debtor had understated his income by $6,239.18 on his Form 122A-1. (Doc. 24). In response, Debtor amended several documents, including Form 122A-2 (the "Means Test"). While Debtor now disclosed a combined gross current monthly income of $11,665.42, his Second Amended Means Test indicated negative disposable income and, therefore, no presumption of abuse.

---

[1] Unless otherwise noted, all facts in the Background section maybe found in the Joint Stipulation of Facts (Doc. No. 59).

2

The UST prepared its own Means Test based upon the information provided by Debtor, which resulted in disposable income of $998.71 per month. On February 18, 2025, the UST filed a statement indicating that it determined that Debtor's case was presumed to be an abuse under 11 U.S.C. § 707(b)(2). On February 20, 2025, the UST moved to dismiss this case because it believes a presumption of abuse arises under § 707(b)(2) and because the totality of the circumstances shows an abuse of chapter 7 under § 707(b)(3). Debtor opposed the motion and filed a Third Amended Means Test. This Third Amended Means Test resolved some, but not all, of the UST's objections to Debtor's deductions.

## DISCUSSION

Section 707(b)(1) of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, the court, . . . on a motion by the United States trustee . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1).

"Sections 707(b)(2) and (b)(3) provide two alternatives pursuant to which a court can find relief under Chapter 7 to be abusive." *In re Smith*, 585 B.R. 168, 174 (Bankr. W.D. Okla. 2018). A presumption of abuse may arise if the Debtor's disposable income exceeds the statutory amounts set out in § 707(b)(2). This is commonly known as the Chapter 7 "Means Test." If a presumption of abuse arises under the Means Test, the debtor must rebut the presumption by establishing special circumstances by a preponderance of the evidence. 11 U.S.C. §707(b)(2)(B); *In re DeJoy*, No. 11-10268, 2011 WL 5827319, at *4 (Bankr. N.D.N.Y. Nov. 18, 2011) (Bankr. N.D.N.Y. Nov. 18, 2011).

3

In this instance, the Debtor and UST disagree as to whether a presumption of abuse arises under the Means Test. Debtor argues that he is entitled to a marital adjustment for the money his spouse spends on personal items, such as clothing and fitness. Debtor also argues that deductions above and beyond the Local Standards should be permitted for other expenses such as, utility bills, healthcare, and food and clothing expenses. UST disagrees.

However, even if the presumption does not arise or the Debtor can rebut the presumption, "the Means Test is only the first step of a two-tiered inquiry." *In re Rivers*, 466 B.R. 558, 569 (Bankr. M.D. Fla. 2012). The court must still determine whether the debtor filed the petition in bad faith and/or whether under the totality of the circumstances the debtor's financial circumstances demonstrate abuse. 11 U.S.C § 707(b)(3); *see also Perelman*, 419 B.R. 168, 172 (Bankr. E.D.N.Y. 2009). The UST has the burden of proof under § 707(b)(3). *Perelman*, 419 B.R. at 177. Because this Court finds that an abuse arises under the totality of the circumstances, it need not decide whether there is a presumption of abuse under the Means Test.

**Totality of the Circumstances**

Under the totality of the circumstances test of § 707(b)(3)(B), courts are permitted to look at the entirety of a debtor's financial situation to determine whether there has been an abuse of the provisions of Chapter 7. *In re Stroh*, No. 18-36301 (CGM), 2020 WL 2125884, at *2 (Bankr. S.D.N.Y. May 4, 2020). While there is no bright-line test, courts employ a pre-BAPCPA, two-part test approved by the Second Circuit in *In re Kornfield*, 164 F.3d 778 (2d Cir. 1999).

Under the *Kornfield* test, bankruptcy courts first consider the debtor's ability to repay his debts and then weigh other mitigating or aggravating factors. *In re Colgate*, 370 B.R. 50, 55 (Bankr. E.D.N.Y. 2007); *In re Haddad*, 246 B.R. 27, 32 (Bankr. S.D.N.Y. 2000). Unlike when it

4

is evaluating the Means Test, when a bankruptcy court is considering the totality of a debtor's circumstances, the court may consider the debtor's postpetition financial situation. *In re Sperry*, No. 22-20287 (JJT), 2023 WL 7311233, at *6 (Bankr. D. Conn. Nov. 6, 2023).

**Ability to Repay**

UST argues that Debtor can repay his debts. According to the UST, Debtor's spouse's income is understated on Schedule I and does not match the income shown on her pay stubs. Likewise, Debtor's schedule J contains duplicated expenses, which make his expenses appear higher than they are. UST also argues that Debtor is reluctant to make lifestyle changes, which includes surrendering rental property that does not earn enough income to cover its expenses.

When evaluating a debtor's ability to repay creditors, a court considers "the 'disposable income' that would be available to pay creditors under a hypothetical Chapter 13 plan." *In re Haddad*, 246 B.R. 27, 32 (Bankr. S.D.N.Y. 2000) (internal citation omitted). To do this, courts review the income and expenses as reported on a debtor's Schedules I and J. *In re Crink*, 402 B.R. 159, 173 (Bankr. M.D.N.C. 2009). It is also appropriate to consider whether the expenses claimed by a debtor can be reduced without depriving the debtor of necessities. *Id.*

It is undisputed that Debtor owns rental property located at 1025 Champlin Avenue, Yorkville, N.Y. ("Rental Property"). (Joint Stip, Doc. No. 59, ¶ 27). There is no equity in the Rental Property and it costs the Debtor $500, per month, more than it brings in. (*Id.* ¶ 27, 28)

On October 10, 2024, Debtor amended his Schedule I to adjust his and his spouse's combined income. (Joint Stip., Doc. No. 59, ¶ 8). On this amended Schedule I, Debtor changed the monthly income from the Rental Property from a positive $900 (Doc. No. 1) to a negative $359 (Doc. No. 15). Despite this change to Schedule I, Debtor never amended his Schedule J (Joint Stip., Doc. No. 59, ¶ 26) to remove the expenses associated with the Rental Property.

5

Debtor's Schedule J continues to list expenses as follows: mortgage payment of $972; real property taxes of $26; combined utilities of $182; and maintenance and repair costs of $220. (Doc. No. 1; Doc. No. 59, ¶ 28). Thus, Debtor has "double-dipped" on the expenses he pays to maintain his Rental Property. He has subtracted the costs from his income on Schedule I while also deducting those same costs as expenses on Schedule J. Additionally, Debtor has listed the Rental Property's mortgage expense twice on Schedule J—once at line 17c and again at line 20a. (Doc. 1). Despite being informed of these inconsistencies, Debtor failed to amend his Schedule J. Thus, Debtor's Schedule J lists $2,372 in erroneous and duplicative expenses.

If the correct information for the Rental Property is incorporated into Debtor's Schedules I & J, the Combined Monthly Income at line 12 on Schedule I would be $7,332.07 and the Debtor's monthly expenses at line 22 of Schedule J would be $6,611.89.[2] This correction alone indicates that Debtor has a positive monthly net income of $720.18, which could be used to pay his creditors in a chapter 13 plan.

Additionally, it is undisputed that if Debtor were to surrender his Rental Property, he would have an additional $500 a month to pay to his creditors. Without this costly property, Debtor's monthly net income would increase to $1,220.18. Debtor's Schedule F lists unsecured debts in the amount of $100,090.45. (Doc. No. 51). If Debtor paid $1,220.18 into a Chapter 13 plan for 60 months, he would be able to pay back $73,210.80 of his unsecured debts. This amounts to, approximately, a 72% dividend to unsecured creditors after accounting for the Chapter 13 Trustee's 10% commission. *See In re Colgate*, 370 B.R. 50, 57 (Bankr. E.D.N.Y. 2007) (finding and ability to repay creditors where debtor's actual monthly income would

---

[2] The Court reached these numbers by including -$500 on Schedule I (in place of the -$350 listed by Debtor) in the "net income from rental property section" and removing the $2,372 from Debtor's Scheduled J (as these expenses are already accounted for in the -$500 income).

produce a 39% dividend to creditors if paid over a 60-month plan). This is without accounting for the Debtor's spouse's income, which the UST argues is understated on Schedule I.[3]

**Aggravating or Mitigating Circumstances**

Now that the Court has established that Debtor can repay his creditors, it must analyze the *Kornfield* factors to determine whether there are any mitigating or aggravating circumstances that would lead the Court to find or not find an abuse of Chapter 7. *In re Fitzgerald*, 418 B.R. 778, 782 (Bankr. D. Conn. 2009). While any relevant factor may be considered by the Court, there are fifteen illustrative factors that guide bankruptcy courts in this Circuit:

> (1) whether petition was filed because of sudden illness, calamity, disability, or unemployment;
> (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay;
> (3) whether the petition was filed in good faith;
> (4) whether the debtor showed good faith and candor in filing schedules and other documents;
> (5) whether the debtor has engaged in "eve of bankruptcy purchases;"
> (6) whether unforseen or catastrophic events forced the debtor into chapter 7;
> (7) whether debtor's disposable income permits liquidation of consumer debts with relative ease;
> (8) whether the debtor enjoys a stable source of future income;
> (9) whether the debtor is eligible for adjustment of his debts through chapter 13;
> (10) whether there are state remedies with the potential to ease the debtor's financial predicament;
> (11) whether there is relief obtainable through private negotiation, and to what degree;
> (12) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities;
> (13) whether the debtor has significant retirement funds;
> (14) whether the debtor is eligible for relief under chapter 11 of the Bankruptcy Code; and

---

[3] Debtor's Amended Schedule I (Doc. 15) indicates that Debtor's spouse grosses $4,643.14 and nets $3,349.36 per month. However, Debtor's own evidence shows that his spouse was averaging $5,969.82 gross and $4,557.49 net in 2024. (Doc. 46-7, Wife's Pay Advices). Even without including Debtor's bonus check of more than $5,000 from February 2024, she averaged $5,105.65 gross pay and $3,863.76 net pay per month in the six-months prior to filing. Debtor's schedules show that his spouse now makes $514.40 less per month than she made prepetition. Thus, it is possible that Debtor may have $514.40 more per month to pay to his unsecured creditors, which would result in a 100% repayment to unsecured creditors. Because this Court has already determined that Debtor can repay his creditors, the Court makes no finding as to what Debtor's spouse's current income is.

7

>   (15) whether there is no other choice available to the debtor for working out his financial problems other than chapter 7, and whether the debtor has explored or attempted other alternatives.

*In re Haddad*, 246 B.R. 27, 33 (Bankr. S.D.N.Y. 2000); *see also In re Sperry*, No. 22-20287 (JJT), 2023 WL 7311233, at *5 (Bankr. D. Conn. Nov. 6, 2023).

The Court finds that factors 1, 2, 4, 7, 8, 9, 12, 13, and 15 are relevant.

As to factor 1, Debtor states that his bankruptcy filing was caused by a series of misfortunes. (Doc. No. 46). Debtor lost $35,000 to a contractor who failed to complete work on his residence and left him with a $15,010 mechanic's lien for building materials. *Id.* One of Debtor's tenants stopped paying rent and one of the apartments in his Rental Property has a leak and cannot be rented. *Id.* Debtor's spouse also has health issues that have been costly. *Id.* The Court has no reason to doubt that Debtor and his family have faced hardships and are struggling financially. This factor is a mitigating factor.

As to factor 2, Debtor has stated that he and his spouse had to "borrow extensively against [their] 401K accounts and pay many of [their] ordinary bills by credit card." (Doc. No. 46). This factor is neutral or slightly aggravating.

As to factor 4, Debtor has not shown candor in filing his schedules and other documents in this case. Debtor's disclosure and accounting of pre- and post-petition income and expenses have changed multiple times. Debtor initially failed to list his spouse's income on his Form 122A-1. (Doc. No. 59, ¶ 7). He failed to list all of his income on his initial Schedule I and had to file an amended Schedule I. (Doc. 59, ¶ 8). Debtor amended his Means Test three times in response to the UST's claims that a presumption of abuse arises. (Doc. Nos. 28, 45, 58). Yet, there continue to be clear errors of significant importance. As discussed above, Debtor's Schedules I and J misstate and duplicate Debtor's income and expenses from his Rental

8

Property. (Doc. Nos. 1 & 15). Finally, Debtor's spouse's income appears to be understated on his Schedule I and no explanation has been provided by Debtor for why his spouse is making significantly less money post-petition. Debtor states that his intent has been to provide truthful and accurate numbers to the Court. (*See* Doc. 46, ¶ 40).

> Nothing in the text or structure of the totality of circumstances referenced in § 707(b)(3) suggests that a debtor's ability to pay, as a prerequisite for dismissal, be coupled with misconduct. Section 707(b)(3) bifurcates "bad faith" and "totality of circumstances" as grounds for dismissal by listing them in separate subparagraphs phrased in the disjunctive. Accordingly, "totality of circumstances ... of the debtor's financial condition" constitutes a separate, distinct and independent ground for relief."

*In re Perelman*, 419 B.R. 168, 177 (Bankr. E.D.N.Y. 2009). However, all of these "errors," considered as a whole, demonstrate a lack of candor and, as such, this factor tends to weigh in favor of an abusive filing.

As to factor 7, as discussed in more detail above, Debtor's disposable income permits liquidation of consumer debts with relative ease. Debtor's combined, current, net monthly income is somewhere between $720.18 and $1,734.58.

As to factor 8, both Debtor and his spouse have stable sources of income.

As to factor 9, the Debtor appears to be eligible for chapter 13.

As to factor 12, as discussed above, Debtor's expenses could be reduced significantly by surrendering his Rental Property.

As to factor 13, whether the Debtor has significant retirement funds is unknown. Debtor's Statement of Financial Affairs indicates that he does not have any retirement or pension accounts (Doc. No. 1, at 13), however, Debtor's prepetition pay stubs show monies being deposited to a 401(k). (Doc. No. 5). Debtor's spouse also has retirement that she is contributing to and a 401(k)

9

loan that she is repaying. (Doc. No. 15, line 5d). However, the amount that is in any of these accounts is not known. This factor is neutral.

As to factor 15, chapter 7 is not debtor's only option for working out his financial problems. Debtor has not attempted to file bankruptcy under another chapter of the Bankruptcy Code.

After weighing the relevant factors, the Court finds that the Debtor's case should be dismissed under § 707(b)(3)(B) because the totality of the circumstances demonstrates abuse.

Having determined that the case should be dismissed under § 707(b)(3)(B), the Court declines to consider the UST's request for dismissal for bad faith under § 707(b)(3)(A).[4]

**CONCLUSION**

For the foregoing reasons, the UST's Motion to Dismiss (Docket No. 38) is conditionally GRANTED. The UST shall upload an order dismissing Debtor's case unless, within 14 days of the date of this Memorandum Decision, Debtor files a motion to convert his case.

###

---

[4] The Court notes that while the UST requested dismissal under § 707(b)(3)(A) in its supplemental response (Doc. No. 62), this relief was not requested in its initial Motion to Dismiss. (Doc. No. 38).